# CASES

IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF WASHINGTON, JUNE TERM, 1834.

---

## The Inhab. of BARING vs. The Inhab. of CALAIS.

In a case of the contested settlement of a pauper, *his declarations* made while in one of the towns litigant, indicative of his intentions as to the place of his residence, were held to be admissible in evidence *as facts*, or parts of the *res gestæ* — though such pauper be living and present in Court at the time of the trial.

THIS was an action of *assumpsit* for supplies furnished for the relief and support of one *Nathan Elliot*, whose settlement was alleged to be in the defendant town.

It appeared, that *Elliot* was a man without family or property. He was present in Court, but was not called by either party. The plaintiffs offered evidence tending to prove the residence of the pauper in *Calais*, during five successive year. To rebut which, the defendants offered, in addition to other evidence, to prove certain declarations of *Elliot*, while at *Baring*, touching his intentions as to residence, made by him within the period of five years to which the testimony of the plaintiffs as to residence, had referred. But on objection thereto, for the purpose of reserving the question, the C. Justice excluded the evidence. If this ruling was correct, judgment was to be entered on the verdict, which was for the plaintiffs; otherwise, it was to be set aside and a new trial granted.

*Allen* and *Chase*, for the defendants, cited *Hatch* v. *Dennis*, 1 *Fairf.* 244; *Tyler* v. *Ulmer*, 12 *Mass.* 163; *Gorham* v. *Can-*

ton, 5 *Greenl.* 266 ; *Milford* v. *Bellingham*, 16 *Mass.* 108 ;
*Aveson* v. *Kennard*, 6 *East*, 188 ; *Smith* v. *Conner*, 1 *Gall.*
172 ; *Pool* v. *Bridges*, 4 *Pick.* 378 ; *Boyden* v. *Moore*, 11
*Pick.* 362 ; *Rice* v. *Bancroft*, 11 *Pick.* 469 ; *Allen* v. *Duncan*,
11 *Pick.* 308.

*Hobbs*, for the plaintiffs.

It is said that the pauper's declarations were not admissible,
because he was directly interested. If he was interested — then
not only his declarations are inadmissible, but he could not be a
witness himself. But that he is a competent witness, we cite
*Alexander* v. *Mahone*, 11 *Johns.* 185 ; 4 *Serg. & Raw.* 203. .

If the pauper was admissible, then the cases cited to this point
on the other side are inapplicable. In those cases, it is true, the
declarations were all rejected, but the person making them was
directly interested.

But it is said the declarations of the pauper were admissible *as
facts*. We admit it would be so, if he had a direct interest in
the subject matter of the declarations, but not otherwise. *Brain-
tree* v. *Hingham*, 1 *Pick.* 245 ; *West Cambridge* v. *Lexington*,
2 *Pick.* 536 ; *Withington* v. *Burlington*, 4 *Pick.* 174.

It is admitted that the intentions of the pauper at the time are
essential in regard to the question of settlement. But then,
these should have been proved by the pauper himself, he being
alive and present in Court.

MELLEN C. J. delivered the opinion of the Court.

For reasons best known to the parties, or to their counsel,
neither party was disposed to call the pauper upon the stand as a
witness, though he was present in court during the trial. The
counsel for *Calais*, offered to give in evidence certain declarations
made by him at different times and on different occasions, within
the period of five years, during which it was alleged by the plain-
tiffs he had resided and had his home in *Calais*. On objection
being made to the admission of proof of these declarations, they
were excluded, as not falling within the decisions in *similar* cases;
because, in those cases where they had been admitted, the *pauper*
or *other person* whose declarations had been admitted, was *dead*.
The question before us is, whether the *decease* in the one case, or

the *life* in the other, of the pauper, has any legal influence in the decision of the question respecting the competency of such declarations as evidence. The counsel for the defendants has contended that the pauper has an interest in obtaining a settlement in *Calais*, and that the declarations he made were *against his interest*, and so on that ground were admissible; and he cited *Hatch* v. *Dennis*, 1 *Fairf*. 244.

The answer to this is that, the pauper certainly has no *pecuniary* interest, whatever his wishes may be. He is clearly an admissible witness, and either party may call him. In *one view* of the subject, his declarations are not so good as his testimony; the declarations were made by him when he was not *on oath*, and so were not the best evidence in the power of the party to produce. They are not like the declarations of the assignee of a bond in an action upon the bond, or of a deputy sheriff for whose misfeasance or neglect an action is brought against the sheriff: for in both those cases the person's declarations are against his interest; and neither of them can be admitted as a witness. If the declarations of the pauper in the case under consideration are legally admissible, it must be on some other principle: that is, because they are to be regarded *as facts* and parts of the *res gestæ*. If they are so to be regarded, then the person who testifies that he heard the declarations made by the pauper, is as good a witness to prove them so made, as the pauper, for reasons which will appear on further examination of the subject. The question of domicil depends upon *residence* and *intention*. The *former* is capable of clear and certain proof; the *latter* is to be known or inferred from the language or conduct of the person whose domicil we are endeavoring to ascertain. In most cases the question is of easy solution, and indeed admits of no doubt; as where he is the head of a family residing with them as a stated house keeper; but when a man or a woman is an insulated being, without any family or settled place of abode, and beside, is destitute of property, except clothing, the question of domicil becomes one of no little difficulty. The case before us furnishes a distinct illustration of the truth of the above remarks; for in such a case only, would such expressions as those of the pauper mentioned in the report of the Judge, be deemed of any importance. In

.the case of *Gorham* v. *Canton*, cited in the argument, the pauper was of this equivocal character, and the declarations made by him while residing in *Canton*, he being dead at the time of trial, were admitted as unguarded disclosures of his intentions, and for that reason, forming in part the character of his residence in that town. *Starkie, vol.* 1, *page* 48, observes that, " when the nature of a particular fact is questioned, a *contemporary* declaration by the party who does the act, is *evidence to explain* it. Where, for instance, in cases of bankruptcy, the question is, with *what intent* the party absented himself from his house, his *declaration* with the *fact of departure*, is evidence to explain that intention." In *Lord George Gordon's* case it was held that the cry of the mob might be received in evidence as part of the transaction. 21 *Howell's St. Tr.* 542. *Starkie, page* 43, further observes, that in such cases " the declaration does not depend so much on the *credit* due to the party who makes it, as to its *connection* with the circumstances. In the instance of the bankrupt, the declaration which he makes at the time of leaving his house, of his intention in so doing, is *not* founded upon his *character for veracity*, but on the presumption arising from experience, that where a man does an act, *his cotemporary declaration accords with his real intention :* its connection with the act gives the declaration greater importance than that which is due to a mere assertion of a fact by a stranger, or a declaration by the party himself at *another* time. Such evidence does *not rest* upon the *credit due to the declarant*, but might be admissible, even although the declarant in ordinary cases would not be believed *upon his oath.*" This species of evidence is admitted as part of the *res gestæ* on the presumption that it elucidates the facts with which the declarations are connected, having been made without premeditation or artifice, and without a view to the consequences; as such, they are considered as better evidence to prove the object for which they are admitted in evidence : for he who makes such declarations, without any reference to consequences, if he were a competent witness, would frequently be under a temptation to give a false coloring to the circumstance when its tendency was known. " Besides," says *Starkie*, " since in this case the effect of the evidence is *independent of the credit due to the party himself*,

it could be of no use to *confirm* his credit by examination *upon oath*, and his declaration as a *mere fact*, is as capable of being proved by *another* witness as any other fact is." These seem to be the general principles of law touching the point under consid- eration. Most of the declarations of the pauper which were excluded by the Judge presiding at the trial, were evidently made without any reference to consequences, and must be presumed to have been expressive of his intentions on the subject of his resi- dence and the character of it at the several times when those declarations were made. According to the principles above stat- ed, we are of opinion that the proof of those declarations which was offered and excluded, should have been received and sub- mitted to the consideration of the jury. Whether they would have been considered as of any importance by them, is not a sub- ject for the decision of the Court.

*Verdict set aside and a new trial granted.*